## McELRATH, Administrator, *v.* DUPUY, Curator.

Where a partial payment has been made on a note, extinguishing thereby the debt *pro tanto;* the parties thereto cannot, by subsequently imputing the payment to another debt, revive the first debt, to the prejudice of third persons.

One who holds a second mortgage on property previously mortgaged to secure the payment of a note, has such an interest in the extinguishment of the note, that a payment made on it cannot be afterwards imputed to another debt, without his consent.

Where in an action on a note, by an administrator against a third possessor of property mortgaged to secure its payment, the latter, through error, confesses judgment for the whole amount, the fact of a partial payment made by the makers of the note not having been communicated to him, the judgment will be void to the extent of the error; but the creditors and heirs of the deceased, represented by the plaintiff, not having been instrumental in producing the error, will be entitled to the benefit of the judgment for the amount really due.

Payment made on a note not due, but bearing interest from date, must be imputed to the principal on which interest was accruing, as the portion of the debt which the debtor had the greatest interest in discharging. As neither principal nor interest was due at the time of the payment, the imputation is not affected by art. 2160 of the Civil Code.

The registry of a judgment, confessed by a third possessor of mortgaged property in favor of the holder of a note secured by mortgage, where neither the confession, nor the judgment rendered thereupon, recite, or refer to, the mortgage, will not amount to a re-inscription of the mortgage in the meaning of art. 3333 of the Civil Code.

An intervention by a third person in an action to enforce a mortgage, will not do away with the necessity of re-inscribing the mortgage on the books of the register of mortgages within ten years from the date of the first inscription. *Per Curiam:* If ten years be permitted to expire without a re-inscription, the mortgage will lose its rank. A litigation between the mortgage creditors does not dispense with this re-inscription.

Where, after the services rendered by an attorney have ended, the compensation is fixed by the mutual agreement of the parties, and no error is shown, effect will be given to the contract. In such a case, the parties having themselves established the value of the services, the compensation cannot be withheld on the ground of exorbitancy.

McElrath
*v.*
Dupuy.

**A** PPEAL from the Court of Probates of Carroll, *Harris*, J. The facts of this case are fully stated in the opinion of the court.

*Stacy* and *Sparrow*, for the plaintiff. By the death of *Gibson* the rights of the parties were fixed. *Buard* v. *Lemée*, 12 Rob. 243. At the time of his death plaintiff had obtained a judgment recognising his mortgage and ordering its execution. The property was seized and offered for sale. *Gibson's* death prevented the sale. An insurmountable barrier was interposed by operation of law; and he cannot be made to suffer for not doing what he could not do. The judgment ordering the execution of the mortgage is *res judicata.* It gave effect to the vendor's lien, and it cannot now be, directly or indirectly, avoided.

*Chinn*, intervenor, *pro se.* No counsel appeared for the defendant.

The judgment of the court was pronounced by

KING, J. *Cavens* and wife, by an act of sale bearing date the 31st of December, 1834, sold to *Fowles & Green*, a tract of land for $15,514 60; of which sum $4,000 was paid in cash, and for the residue of $11,514 60, a note was given, payable five years after its date, bearing ten per cent interest, and a mortgage retained on the property sold to secure its payment. This land, after several mesne conveyances, was purchased by *Gibson*. After the death of *Cavens*, the plaintiff, as his administrator, instituted a suit against *Fowles & Green*, as the makers of the note secured by the mortgage, and against *Gibson* as the third possessor of the hypothecated property. A judgment was confessed by *Gibson* for the sum claimed, with a right to enforce it on the lands described in the sale from *Cavens* to *Fowles & Green*; but the mortgage is not recited, nor referred to, either in the confession or the judgment. *Fowles & Green* made no defence, and no action appears to have been taken in relation to them in the suit. Before a sale could be effected under this decree, *Gibson* died, and shortly after that event the plaintiff presented an application to the probate court for a sale of the land mortgaged, setting forth the fact of the special encumbrance to which it was subject, and the previous judgment by confession.

In this proceeding *R. H. Chinn* intervened, alleging that he was a creditor of *Gibson*, and that his demand was secured by a special mortgage on the land on which the plaintiff was seeking to enforce his claim. He alleged that the judgment against *Gibson* was fraudulently obtained, by reason of which it was null; that, at the time it was rendered, there was nothing due to the succession of *Cavens* by *Gibson*; that the mortgage retained by *Cavens* was not so recorded as to operate a notice to third persons; and that the rights of the intervenor, as a mortgagee, were not affected by such registry as had been made; and finally, he denied the identity of the note sued on with that described in the mortgage. The claim of the intervenor is resisted both by the plaintiff and the defendant, on the ground that the notes on which he founds his demand were given in error; that the consideration was professional services, for which the charge was exorbitant. The court below rendered a judgment in favor of the plaintiff for the entire amount of his claim, recognising the vendor's mortgage, and giving it

priority over that of the intervenor; and a judgment in favor of the intervenor for the sum claimed by him, with a right of mortgage next in rank after that of the plaintiff. From this judgment the intervenor has appealed.·

The evidence adduced by the plaintiff in support of his claim in the court below, was the judgment rendered by the District Court upon *Gibson's* confession, the act of sale from *Cavens*, with the mortgage retained, certified to be duly registered in the mortgage office, and a note corresponding in amount and in the time of its maturity with that described in the mortgage, but bearing date a day later. The evidence leaves no doubt that this note is the same intended to be secured by the mortgage. No credit appeared upon the note when offered in evidence, and no reference is made in the pleadings or judgment to any credit to which it is entitled. During the progress of the trial a paper was discovered to be pasted over the back of the note, on the removal of which the following endorsement appeared :

"Received of *T. J. Green, Esq.*, a note of *James R. Blunt*, for eight thousand three hundred dollars, due Jan'y    , eighteen hundred and thirty-nine, bearing interest at eight per cent. Principal and interest up to first June, 1839, $8,604 34.  May 12, 1839.

Warren county, Miss.    (Signed)    G. W. ——————,
                                        of the estate of *Elijah Cavens*, dec."

Lines are drawn across this endorsement, and the pen passed heavily over the signature, leaving only the two initial letters, *G. W.* of the plaintiff's name distinguishable. This endorsement is shown to be in the hand-writing of *McElrath*.

The plaintiff has endeavored to show that the endorsement was made in error, and subsequently stricken off for that reason, and the credit given on another note of *Fowles & Green*, of which he, as administrator of *Cavens*, was the holder, to which the payment was properly imputable. The evidence forbids that conclusion. The note on which it is contended the credit should have been given was not executed until June, 1840, long after the transfer of *Blunt's* note, and more than a year after *Blunt's* administrater had made a large payment on account. The debt itself had no existence for more than a year after the payment made to the plaintiff, and whether it was to arise depended on a future contingency, the happening of which could not have been forseen by the parties. At the date when the payment was made, there was a large subsisting debt from *Fowles & Green* to *Cavens*, bearing the highest rate of conventional interest, and encumbering a valuable estate with a mortgage, both of which the debtors had the strongest interest in extinguishing. Is it to be presumed, in the absence of proof, that, with such motives to discharge a subsisting debt of the most onerous character, the debtors intended to apply their funds to the payment of a debt which did not exist, and which it could not positively be forseen ever would ?  The evidence rejects every other conclusion than that the credit was endorsed on the note sued npon, in strict accordance with the intention of the parties when the payment was made ; and other facts disclosed by the evidence, to which it is not necessary to advert, support this view. The debt and mortgage were extinguished to the extent of the payment affected by the transfer of *Blunt's* note, and it was not in the power of parties to revive them to the prejudice of third persons, by consenting that the payment should be imputed to another debt. The position assumed, that the credit was stricken rom this note and placed upon another with the consent of the only parties in-

terested in the imputation, is equally untenable. At that date *Gibson* was the owner of the land mortgaged to secure the payment of the note, and the inter-venor held a mortgage on it to secure his demand. Both of these parties were therefore interested in the reduction of the encumbrance.

The fact of this payment was not communicated to *Gibson*, and the evidence leaves no doubt that he confessed the judgment in error, and in utter ignorance of the partial discharge of the debt and mortgage. To the extent of that error the judgment rendered by the District Court is void. But this nullity is not to be visited on the creditors and heirs of *Cavens*, who were not instrumental in producing the result. They are entitled to the benefit of the judgment, for the amount really due.

Neither the principal, nor the interest, of the note sued on was due at the date of the payment. The credit is, therefore, not to be applied in accordance with the 2160th art. of the Code, to the interest, but to that part of the debt which the debtor had the greatest interest in discharging, which was the principal, as upon that interest was accruing. This payment deducted from the principal leaves $2,910 26, due on the 1st June, 1839, bearing interest at ten per cent from that date; and the further sum of $5,085 60, interest which accrued previous to the 1st June, 1839, which bears no interest.

It is contended that the mortgage retained to secure this note has become extinct, not having been re-inscribed within ten years from its first registry. It was recorded on the 4th of February, 1836. The plaintiff urges: *first,* that the recording on the 11th of May, 1841, of the judgment rendered by the District Court, was a re-inscription; *secondly,* that from the date of *Chinn's* intervention in the suit in 1842, he had notice of the existence of the mortgage, and that, pending the litigation, the object of which was to enforce the mortgage, no prescription ran between the parties.

Neither the confession of *Gibson*, nor the judgment rendered upon that confession, recite, or make any reference whatever to, the mortgage in favor of *Cavens'* succession. The registry of that judgment was clearly not a compliance with the 3333d art. of the Code, and was not a re-inscription of the mortgage.

After this case was first taken under consideration, the question which presents itself relative to the peremption of mortgages, underwent an elaborate argument in the case of *Shepherd* v. *The Orleans Cotton Press Company, ante* p. 100. We there held that, with regard to inscribed mortgages, " the delay of ten years is in all cases fatal, and, if it be permitted to expire without a re-inscription, the mortgage loses its rank; and that a litigation between the mortgage creditors does not dispense with this re-inscription." We conclude, there-fore, that the plaintiff has lost all the hypothecary rights resulting from the mortgage retained by *Cavens,*as regards other creditors, and can only rank as a creditor of *Gibson*, with a judicial mortgage to take effect on the 11th of May, 1841. This conclusion renders it unnecessary to consider several questions originally deemed of importance in the cause.

The intervenor founds his claim upon three notes for $4,500 each, dated the 3d of February, 1840, bearing seven per cent interest from their date, the payment of which is secured by mortgage. The consideration for which they were given was professional, and other, services, rendered to *Gibson*, for which the charge is alleged to be exorbitant. Those services were rendered in efforts to collect claims amounting to about $135,000, the recovery of which *Gibson*, at the time, considered to be doubtful. The intervenor, in answer to an interroga-

McElrath
v.
Dupuy.

tory propounded to him, says, that by the terms of the agreement between Gibson and himself, his compensation was made "wholly contingent upon successfully pursuing the claim; that it was to be commensurate therewith, liberal and adequate; and, if unsuccessful, he was to receive nothing for his skill, toil, and expeditnre of time and money. "In the prosecution of the claim he instituted three several suits; left the city of New Orleans, where he resided and exercised his profession, and repaired to a distant part of the State, where he'performed various and laborious duties, many of them not strictly appertaining to his professional engagement; and finally affected a compromise, which was entirely satisfactory to his client. After the services were completed, the compensation was fixed by the mutual agreement of the parties, and the sum agreed upon was secured by a mortgage. Witnesses were called on the trial below, to estimate the value of the intervenor's services, but the parties themselves having established their value, and no error having been shown, effect must be given to their contract.

After this cause was heard in this court, the interyenor died; and since that time his administrator has been made a party to this appeal.

For the reasons assigned, it is ordered that the judgment of the Probate Court be reversed. It is further ordered that the plaintiff, as administrator of the succession of Elijah Cavens, deceased, be adjudged to be a creditor of the succession of Claudius Gibson, deceased, for the sum of $2,910 26 cents, with ten per cent interest thereon, from the first day of June, 1839, and for the further sum of $5,085 60 cents, without interest; both of said sums to rank as a judicial mortgage claim, to take effect on the 11th of May, 1841. It is further ordered that Nathan Jarvis, as administrator of the succession of the intervenor, Richard H. Chinn, have judgment and recover from the defendant, the sum of $13,500, with seven per cent yearly interest thereon, from the 3d of February, 1840, until paid; and that he be adjudged to be a creditor of the succession of said Claudius Gibson, by a mortgage to have effect from the 3d day of February, 1840, on a tract of land lying in the parish of Carroll, fronting on the Mississippi river, bounded above by lands of William Henderson, and below by land sold by Gibson to John Mitchum, containing about 1,580 acres, being the same conveyed by J. M. January to Claudius Gibson, and described in a certain act of mortgage executed by Claudius Gibson to the said R. H. Chinn, on the 3d day of February, 1840, before Eli Harris, notary public; and that said land be forthwith sold according to law, to pay and satisfy the aforesaid mortgages according to the rank aforesaid, and that the proceeds of sale be so applied. It is further ordered that the succession of Claudius Gibson, pay the costs of both courts.